IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

**Alexandria Division**

| | |
|---|---|
| TINA SMITH, et al., ) | |
| ) | |
| *Plaintiffs* ) | |
| ) | |
| v. ) | Civil No. 1:18-cv-915 |
| ) | Hon. Liam O'Grady |
| CSRA, et al. ) | |
| ) | |
| *Defendants*. ) | |
| ) | |

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on Defendants' Motions for Summary Judgment. Dkt. 102, Dkt. 104. The motions were fully briefed and the Court dispensed with oral argument because it would not aid in the decisional process.

## I.    BACKGROUND

Plaintiffs Tina Smith and Robert Farnsworth sued CSRA, Inc. ("CSRA") and the Attorney General of the United States in his official capacity, as the federal official in charge of the United States Drug Enforcement Administration ("DEA"), for monetary damages and injunctive relief. Each Plaintiff alleged that both DEA and CSRA unlawfully discriminated against them by denying reasonable accommodations, and by unlawfully terminating them in retaliation for protected activity in violation of the Rehabilitation Act of 1973, 29 U.S.C. § 791 *et seq.*, and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*

The case arises from DEA's geospatial intelligence program ("the Program"), which subcontracted "Geospatial Intelligence Subject Matter Experts." Smith worked as a

1

subcontractor for the DEA prior to 2016, and DEA Chief Technology Officer Mark Shafernich

oversaw the Program.

In 2016, the task order under which Smith was subcontracted to the Program shifted from

a different prime contractor into CSRA's prime contract.[1]  At that time, the Program was

primarily located in the DEA's Sterling, Virginia, office, and Smith had a cubicle there.  She also

had remote access to DEA infrastructure via a remote access token ("Token") provided by DEA,

and Shafernich allowed her to work remotely.

When CSRA took over the contract, Smith's performance was deliverable directly to

Shafernich.  CSRA Program Manager Scott Barnhart, who coordinated the DEA task order as

part of the prime contract, met with Smith and they negotiated a subcontract.  The subcontract

was between CSRA and Smith Global, LLC, Smith's employer.  Under the subcontract, Smith

maintained the position she was previously staffing under a different prime contractor as SME in

the Program.  The agreement provided that Smith Global, LLC was directly responsible to the

DEA for contract requirements, that Smith reported her work to DEA, and that the contract's

place of performance was directed by CSRA or DEA.  It also stated that CSRA did not provide

employment benefits, withhold income or taxes from Smith's pay, that Smith was an

independent contractor, and disclaimed any partnership or employment relationship.

DEA was increasingly dissatisfied with the Program's development, value, and utility.

Shafernich's superior, DEA Acting Assistant Administrator for Information Systems Maura

Quinn, also doubted Smith's utility to DEA because she was dissatisfied with Smith's ability to

answer questions on the Program.  Quinn determined the Program needed new DEA leadership,

and in April, 2017, Quinn transferred[2] the Program to the Special Investigations Bureau ("SIB")

---

[1] The CSRA prime contract, ITSS-4, is a Department of Justice contract which includes a task order, WPR3, which pertains to DEA.

[2] Both the contract between CSRA and DEA and the contract between CSRA and Smith Global, LLC

at DEA Headquarters. After the Program was transferred from Sterling to DEA Headquarters, Quinn came to understand that DEA was funding a second, similar geospatial intelligence program in El Paso, Texas, which was more aligned with DEA's goals. By June of 2017, DEA had begun to consolidate the two geospatial intelligence programs.

Under the Program's new leadership at DEA Headquarters, Smith's DEA technical point of contact was DEA Project Manager Kevin Tseng, and the Program was ultimately overseen by Section Chief Millie Tyler. Pursuant to Quinn's instructions, Tyler required Smith to work onsite at Headquarters starting that day. Smith began lobbying to garner support to continue her remote work arrangement. She contacted her former DEA contact Shafernich at the end of April, and also contacted Barnhart, her CSRA contact. Barnhart supported her requests but told her that DEA was requiring her to report to DEA Headquarters starting on May 1, 2017.

Tyler and Quinn did not agree to any remote work arrangement and required her to report to DEA Headquarters on May 1, 2017. Smith did not report until May 2, the next day. Beginning on her first day assigned to DEA Headquarters, Smith regularly worked remotely despite frequent notification from her superiors that she was not authorized to do so.

On May 2, 2017, Smith requested a DEA parking pass from Tyler. The DEA Headquarters parking policy prohibits parking permits from being issued to contractors, as opposed to employees, due to contractual constraints imposed by the building lease. As a result, some contractors park at the Pentagon City Mall, which is more than a block away, and others park at a hotel adjacent to DEA Headquarters.

Despite the policy, Tyler escalated the request until it reached the DEA Equal Employment Opportunity ("EEO") Officer. While the EEO office was analyzing the pass issue, DEA contacted Barnhart to find an alternative accommodation in the meantime. DEA proposed a three-day part-time schedule as an accommodation. On May 10, 2017 Barnhart relayed DEA's

3

proposed accommodation to Smith, who declined it. She continued to work remotely in contravention of DEA instructions, and when she did report to DEA Headquarters, she parked at the Pentagon City Mall. In response to Smith's accommodation request, Tyler had requested a medical note in support thereof. Shafernich, Smith's former DEA contact, provided a note on Smith's behalf on May 15.

On May 26, 2017 Smith met with Barnhart and CSRA Human Resources Manager Colleen Bjork regarding DEA's work location requirement. Ms. Bjork explained that DEA was requiring Smith to work from DEA Headquarters, which she was not doing, and that as a result she was not meeting DEA's expectations or satisfying the requirements of her role. A few days after that meeting, on May 29, Smith submitted her first official accommodation request through DEA's EEO office, and at the same time, submitted an EEO complaint alleging discrimination based on race, sex, and disability.

Tyler sought to prevent Smith from continuing to work remotely, and on May 31, 2017, requested that Barnhart retrieve Smith's Token. Barnhart instructed Smith to return her Token on June 1. On June 2, DEA's EEO office obtained a parking pass for Smith. Barnhart instructed Smith to return her Token again on June 5. On June 5, Smith picked up her parking pass from the EEO office, did not return her Token, left DEA Headquarters and called in to a meeting remotely. She worked remotely again on June 6 before returning her Token that day. She emailed Quinn on June 7—circumventing both her DEA and CSRA chains of command by failing to contact Tseng, Tyler, or Barnhart—asking to keep remote access.

In addition to the persistent remote work issue Smith failed to utilize the time tracking system which DEA requires subcontractors at Headquarters to use after the Program moved to DEA Headquarters. She continued to interact with Shafernich as though he was her superior despite the new chain of command and unit leadership, and she created friction by failing to

4

directly address the concerns and requests of her new leadership team. Moreover, Quinn became aware that Smith was violating the DEA information security policy by improperly storing DEA documents. Quinn decided to revoke Smith's access to DEA information, and her clearance was terminated on June 9, 2017. The DEA notified Barnhart the same day, and on June 12 CSRA terminated the subcontract with Smith Global, LLC.

To eliminate redundancy with the El Paso geospatial intelligence program, the decommission of the Program at DEA Headquarters continued. By the time Smith was replaced, the only other person assigned to the Program at DEA Headquarters was finalizing his transfer to El Paso.

CSRA replaced Smith with a new subcontractor, Robert Farnsworth, on September 18, 2017. Farnsworth was an employee of Apex Systems, LLC. The subcontract between CSRA and Apex Systems, LLC identified that Farnsworth was an independent contractor, not an employee.

On September 22, 2017, Farnsworth emailed Tseng requesting an adjustable height standing desk as an accommodation. Tseng forwarded the request up the chain of command. The DEA employee responsible for administrative and personnel management in the unit notified Tyler, the unit chief, that DEA would provide a standing desk but required a medical note supporting the request. Farnsworth created his own improvised standing desk using stacks of paper in the interim.

Farnsworth eventually furnished a doctor's note on November 21, 2017, his request was approved and the procurement office began processing his request on November 29. On December 4, Farnsworth provided an affidavit relating to Smith's EEO complaint to an investigator. He did not inform Barnhart, CSRA, or Quinn that he was contacted by an EEO investigator or that he was participating in the investigation. On December 5, DEA notified

5

CSRA that the position was no longer needed due to the transfer of work to El Paso. CSRA terminated the subcontract with Apex Systems, LLC, and did not backfill the position.

After Farnsworth's subcontract was terminated, on December 19, 2017, he submitted an informal EEO complaint to DEA regarding his standing desk request and the termination of his contract.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 56 states that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). While the burden is on the moving party to demonstrate entitlement as a matter of law, the opposing party "must 'set forth specific facts showing that there is a genuine issue for trial.'" *Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013) (quoting *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003)). "A genuine question of material fact exists where, after reviewing the record as a whole, a court finds that a reasonable jury could return a verdict for the nonmoving party." *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012) (citation omitted).

In reviewing a summary judgment motion, the court must "draw all justifiable inferences in favor of the nonmoving party." *United States v. Carolina Transformer Co.*, 978 F.2d 832, 835 (4th Cir. 1992). "But there must be 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly

6

probative, summary judgment may be granted.'" *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 213 (4th Cir. 2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986)).

## III.   ANALYSIS

### A. Claims Against Defendant CSRA

#### 1. Plaintiffs Withdrew Rehabilitation Act Claims Against CSRA

CSRA challenged Plaintiffs' Rehabilitation Act claims, arguing first that section 503 of the Rehabilitation Act does not provide a private right of action, and second that CSRA is not subject to section 504 of the Act. CSRA is clearly correct on both counts. *See Painter v. Horne Bros., Inc.*, 710 F.2d 143 (4th Cir. 1983) (section 503 of the Rehabilitation Act does not provide an implied right of action); *DeVargas v. Mason & Hanger-Silas Mason Co.*, 911 F.2d 1377, 1383 (10th Cir. 1990) (government contractors "do not fall within the ambit of section 504 of the Rehabilitation Act,"); *accord Jarno v. Lewis*, 256 F. Supp. 2d 499, 504 (E.D. Va. 2003). Accordingly, Plaintiffs properly withdrew their Rehabilitation Act claims against CSRA. *See* Dkt. 116 at 1.

#### 2. Plaintiffs' ADA Claims Fail as a Matter of Law

Plaintiffs Smith and Farnsworth claim that CSRA discriminated against them based on their disabilities in violation of the Americans with Disabilities Act ("ADA"). Because the ADA does not apply to protect them from CSRA, these claims fail.

The ADA provides that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability" in regard to the qualified individual's employment. 42 U.S.C. § 12112(a). "To establish a claim for disability discrimination under the ADA, a plaintiff must prove '(1) that she has a disability, (2) that she is a "qualified individual" for the employment in question, and (3) that [her employer] discharged her (or took other adverse employment action) because of her disability.'" *Jacobs v. N.C. Admin. Office of the Courts*, 780

7

F.3d 562, 572 (4th Cir. 2015) (quoting *EEOC v. Stowe–Pharr Mills, Inc.*, 216 F.3d 373, 377 (4th

Cir. 2000)). Thus, only qualified individuals are entitled to the protections of the ADA.

CSRA argues that Plaintiffs are not entitled to relief under the ADA because they were

independent contractors, not employees. The ADA defines an "employee" as "an individual

employed by an employer." 42 U.S.C. § 12111(4). It "does not protect independent contractors

from discrimination based upon disability." *Ratledge v. Sci. Applications Int'l Corp.*, No. 1:10-

CV-239, 2011 WL 652274, at *2 (E.D. Va. 2011) (citing *Flannery v. Recording Indus. Ass'n of

Am.*, 354 F.3d 632, 642 (7th Cir. 2004); *Lerohl v. Friends of Minn. Sinfonia*, 322 F.3d 486, 489

(8th Cir. 2003), *aff'd*, 452 F. App'x 348 (4th Cir. 2011); *accord Chamberlain v. Securian Fin.*

*Grp., Inc.*, 180 F. Supp. 3d 381, 391 (W.D.N.C. 2016).

In the Fourth Circuit, whether one is an independent contractor or employee "is

determined under agency principles and the 'economic realities' of the relationship."

*Chamberlain*, 180 F. Supp. 3d at 391 (quoting *Garrett v. Phillips Mills, Inc.*, 721 F.2d 979, 981

(4th Cir. 1983)). The factors to consider include,

> (1) the kind of occupation, with reference to whether the work usually is done
> under the direction of a supervisor or is done by a specialist without supervision;
> (2) the skill required in the particular occupation; (3) whether the "employer" or
> the individual in question furnishes the equipment used and the place of work; (4)
> the length of time during which the individual has worked; (5) the method of
> payment, whether by time or by the job; (6) the manner in which the work
> relationship is terminated; *i.e.,* by one or both parties, with or without notice and
> explanation; (7) whether annual leave is afforded; (8) whether the work is an
> integral part of the business of the "employer"; (9) whether the worker
> accumulates retirement benefits; (10) whether the "employer" pays social security
> taxes; and (11) the intention of the parties.

*Garrett*, 721 F.2d at 982. While no one factor is determinative, "the Fourth Circuit has

consistently focused on control." *Butler v. Drive Auto. Indus. of Am., Inc.*, 793 F.3d 404, 409

(4th Cir. 2015). "[W]hether an employment relationship or an independent contractor

relationship was created . . . is a question of law." *Cilecek v. Inova Health Sys. Servs.*, 115 F.3d 256, 261 (4th Cir. 1997).

Each factor identified above shows Plaintiffs here are independent contractors. First, Plaintiffs are subject matter experts with a specialized expertise, and CSRA did not supervise their work-product which was deliverable directly to DEA. Second, the occupation is specialized, and Plaintiffs held themselves out as experts. Indeed, the task order required subject matter experts. Both the first and second factors therefore weigh against finding these Plaintiffs to be employees. The third factor also weighs against employment status because CSRA did not provide Plaintiffs' equipment, and DEA—not CSRA—set the place of performance as DEA Headquarters. Similarly, because each Plaintiff had such a brief relationship with CSRA, factor four similarly weighs against employment status.

The very contracts governing Plaintiffs' relationships with CSRA also show they were independent contractors. Smith's contract explicitly provided that CSRA would not withhold taxes and that she was not eligible for CSRA employment benefits. Both Smith's contract and Farnsworth's contract reveal a clear intent to maintain an independent contractor relationship, evidenced by Plaintiffs' employers, independent entities not parties to this action, and evident because the contracts refer to Plaintiffs as independent contractors, not employees. Further, both Smith and Farnsworth were terminable at will without notice, and provided their contract deliverables to DEA but not to CSRA. And further still, these Plaintiffs were not at all integral to the business of CSRA, which is engaged in fulfilling government contracts, not geospatial intelligence.

Control is the most important factor in the analysis, and most persuasive here. CSRA simply did not manage either Smith's or Farnsworth's work for the DEA. DEA mandated the place of work, provided the equipment for work, dictated the work output, requirements, and

9

manner of performance. Further, the undisputed facts show that CSRA lacked control over Smith. Smith did not change her behavior when Barnhart communicated to her that DEA was requiring her presence at DEA Headquarters, nor did she return the Token upon Barnhart's first request. CSRA's role was simply to provide an expert in the relevant field to DEA, and CSRA did that by finding these Plaintiffs and instructing them to report to DEA pursuant to DEA's requirements.

There is no genuine dispute that both Plaintiffs in this case were independent contractors, not employees of CSRA. Each factor weighs against employment status, and CSRA did not have control over their work. Accordingly, Plaintiffs are not entitled to ADA protections against CSRA.

Plaintiffs attempt to avoid this conclusion by arguing that "CSRA's liability arises from its joint employer relationship with DEA." Dkt. 116 at 18. In the Fourth Circuit, courts determine whether an individual is jointly employed by multiple entities by assessing the following factors:

> (1) authority to hire and fire the individual;
> (2) day-to-day supervision of the individual, including employee discipline;
> (3) whether the putative employer furnishes the equipment used and the place of work;
> (4) possession of and responsibility over the individual's employment records, including payroll, insurance, and taxes;
> (5) the length of time during which the individual has worked for the putative employer;
> (6) whether the putative employer provides the individual with formal or informal training;
> (7) whether the individual's duties are akin to a regular employee's duties;
> (8) whether the individual is assigned solely to the putative employer; and
> (9) whether the individual and putative employer intended to enter into an employment relationship.

*Butler*, 793 F.3d at 414. Like in the "analogous but legally distinct independent contractor context," no one factor is determinative and "control remains the 'principal guidepost' in the analysis." *Id.* The first three factors are most important in the analysis because they are

important in determining the extent to which an entity has ultimate control, practical control, or functional control of an employee. *See id.*

CSRA was not a joint employer of Plaintiffs in this case. The three most important factors weigh against a joint employment relationship because CSRA had minimal control over Smith and Farnsworth. Although CSRA had the contractual authority to terminate their contracts, it was DEA that directly caused the termination of Plaintiffs' contracts. Moreover, CSRA exercised no workplace supervision over Plaintiffs, and furnished neither the workplace equipment nor location.

Plaintiffs argue that CSRA "disbursed Plaintiff's [sic] paychecks, officially terminated Plaintiff, [sic] and handled employee discipline." Dkt. 116 at 21. These factors are insufficient on their own to render CSRA a joint employer. As discussed above, although CSRA paid Plaintiffs, their work was for DEA, at DEA, and they reported directly to DEA. And as discussed above, while CSRA officially terminated Plaintiffs' subcontracts, that occurred only after (a) Smith became incapable of fulfilling her contractual obligations to DEA, and (b) the DEA position to which Farnsworth was staffed was eliminated. Finally, while CSRA was capable of handling employee discipline in theory, the fact is that DEA maintained a chain of command of which Plaintiffs were a part, independent of CSRA's chain of command, and moreover, when CSRA attempted to rein Smith in, she all but disregarded the efforts to do so.

The majority of remaining factors also weigh against a joint employment relationship, for the reasons discussed in the independent contractor discussion above. Plaintiffs point only to factor eight in support of CSRA's joint employer status, but this factor is unpersuasive in light of CSRA's lack of ultimate control. Thus, CSRA was not a joint employer of these Plaintiffs, who were independent contractors.

11

Accordingly, Plaintiffs were not covered employees for purposes of the ADA, which protects only "qualified individuals." § 12112(a). Because there is no genuine dispute of material fact that these Plaintiffs' relationships with CSRA do not fall within the purview of the ADA, the claims against CSRA fail as a matter of law.

### B. Claims Against Defendant Barr

Each Plaintiff asserts that DEA, first, failed to accommodate a disability, and second, terminated them in retaliation for protected activity. These claims are brought pursuant to the ADA and the Rehabilitation Act. Although they employ different statutory language, courts "construe the ADA and Rehabilitation Act to impose similar requirements." *Halpern v. Wake Forest Univ. Health Scis.*, 669 F.3d 454, 461 (4th Cir. 2012). Accordingly, both statutes "require a plaintiff to demonstrate the same elements to establish liability." *Id.*

"[I]t is Defendant Barr's position that this Court need not determine" whether these statutes are properly applicable here because "Plaintiffs' claims all fail on their merits as a matter of law." Dkt. 105 at 13 n.4. Accordingly, the Court will analyze the claims on their merits.

### 1. Failure to Accommodate

A *prima facie* case of failure to accommodate requires a plaintiff to show: "(1) that she was an individual who had a disability within the meaning of the statute; (2) that the employer had notice of her disability; (3) that with reasonable accommodation she could perform the essential functions of the position; and (4) that the employer refused to make such accommodations." *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 579 (4th Cir. 2015) (brackets omitted) (quoting *Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 345 (4th Cir. 2013)). DEA argues that both Plaintiffs have failed to raise a genuine dispute of material fact regarding the fourth element, that DEA refused to accommodate them.

"The burden of identifying an accommodation . . . rests with the plaintiff, as does the ultimate burden of persuasion with respect to demonstrating that such an accommodation is reasonable." *Lamb v. Qualex, Inc.*, 33 F. App'x 49, 59 (4th Cir. 2002). Yet, employers are not required to provide "the exact accommodation that the employee requested," and may instead provide "an alternative reasonable accommodation" at their discretion. *Reyazuddin v. Montgomery Cty., Maryland*, 789 F.3d 407, 415 (4th Cir. 2015).

Moreover, while an "unreasonable" delay may in some circumstances constitute denial of an accommodation, a short delay can support a claim only when "the employer refused to engage in an interactive process with the employee or acted in bad faith in the interim." *Marks v. Washington Wholesale Liquor Co. LLC*, 253 F. Supp. 3d 312, 325 (D.D.C. 2017). Especially when the record demonstrates that an accommodation request is being actively considered, a delay may be found reasonable. *See Hannah P. v. Coats*, 916 F.3d 327, 337 (4th Cir. 2019). Courts across the country routinely find delay periods of months to be reasonable. *See Marks*, 253 F. Supp. 3d at 324-25 (collecting cases); *Henry v. City of Allentown*, 2014 WL 4652474 (E.D. Pa. 2014) (two month delay reasonable); *Delgado v. Triborough Bridge and Tunnel Authority*, 485 F. Supp. 2d 453 (S.D.N.Y. 2007) (two month delay reasonable).

### (i) DEA Did Not Refuse to Accommodate Plaintiff Smith

DEA argues that Smith received a reasonable accommodation within a reasonable time period, that she was offered an alternative reasonable accommodation in the interim which she declined, and that she has no legal basis to demand a specific accommodation of remote work. Smith has not identified a genuine dispute regarding whether DEA refused to accommodate her.

Smith met her burden of identifying an accommodation when, prior to starting at the DEA Headquarters facility, she requested that her remote work arrangement be honored, and when she requested a DEA parking pass. The record facts are clear and undisputed that Smith

13

received a parking pass five weeks later. Five weeks is not an unreasonable delay in and of itself. In this case, that is especially true because DEA's active consideration of her request required the EEO office to analyze not just the law and DEA policy, but also the terms of the building lease.

Furthermore, DEA offered an alternative accommodation in the meantime. Smith declined that alternative accommodation, a part time schedule, which is statutorily recognized as reasonable.[3]

In light of the parking pass and schedule modification offer, the fact that DEA refused to allow her to work remotely does not constitute a refusal to accommodate her. While all the relevant contracts provided DEA with the right to determine Smith's place of performance, DEA had no countervailing obligation to allow her to work remotely even if she were previously allowed to do so. Notably, Smith's medical documentation did not provide that telework was necessary for her to perform any essential function of her job. Employers must provide a reasonable accommodation, but the ADA and Rehabilitation Act do not entitle Smith to her preferred accommodation. Instead, employers retain discretion to provide alternative reasonable accommodations, which DEA did here. Though Smith preferred remote work, DEA offered her a part-time schedule—which she declined—before ultimately provided her the parking pass she requested.

There is no genuine dispute that DEA provided Smith with a reasonable accommodation, the parking pass, after actively considering it for a reasonable period of time. Moreover, during that time, DEA offered an alternative reasonable accommodation, which Smith declined. Accordingly, DEA accommodated Smith and is entitled to judgment as a matter of law.

---

[3] 42 U.S.C. § 12111(9)(B) provides that "The term 'reasonable accommodation' may include . . . part-time or modified work schedules."

14

### *(ii) DEA Did Not Refuse to Accommodate Plaintiff Farnsworth*

DEA is also entitled to judgment as a matter of law regarding Farnsworth's failure to accommodate claim because there is no genuine dispute that DEA also provided him a reasonable accommodation.

Farnsworth initially requested a standing desk to accommodate him on September 22, 2017, and his request was elevated beyond his chain of command the same day. His ultimate supervisor, Tyler, was informed on September 25 that DEA would provide the accommodation but required a doctor's note. She relayed that information to Farnsworth the same day; when Farnsworth eventually furnished the note on November 21, his request was approved and DEA began the procurement process on November 29.

Thus, DEA responded to his initial request in three days, and once Farnsworth provided the documentation, his desk was not only approved but also ordered in less than two weeks. DEA did not engage in any unreasonable delay; the delay in this case resulted from Farnsworth's own delay in providing medical documentation.

Farnsworth's delay in providing DEA a doctor's note to support his request does not provide a basis for a failure to accommodate claim. First, employer requests for documentation which support accommodation requests align with the goals of the ADA, demonstrate employer good faith, and are encouraged by the law. *See Williamson v. Bon Secours Richmond Health Sys.*, 34 F. Supp. 3d 607, 613 (E.D. Va. 2014). Second, documentation requests can play a crucial role in identifying any limitations resulting from a disability, and thereby improve the employer's ability to recognize and provide reasonable accommodations. Here, DEA promptly and appropriately notified Farnsworth of the documentation request, and when he furnished it, promptly ordered the accommodation which he requested.

15

There is no genuine dispute as to the fact that DEA did not refuse to accommodate Farnsworth. Accordingly, DEA is entitled to judgment as a matter of law on Farnsworth's failure to accommodate claim.

## 2. *Discrimination*

Counts I and II of the Complaint charged disability discrimination, but made clear that the Plaintiffs were suing based on their right to a reasonable accommodation for a disability. *See* Compl. at 12. Nonetheless, Plaintiffs have subsequently argued in their Oppositions to Defendant Barr's Motion for Summary Judgment that those Counts also constitute discrimination claims. These claims are addressed in turn.

### (i) Plaintiffs' Disability Discrimination Claims Fail

Plaintiffs have argued that they were discriminatorily terminated because they are disabled. "To establish a claim for disability discrimination under the ADA, a plaintiff must prove '(1) that she has a disability, (2) that she is a "qualified individual" for the employment in question, and (3) that her employer discharged her (or took other adverse employment action) because of her disability.'" *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 572 (4th Cir. 2015) (brackets omitted) (quoting *EEOC v. Stowe–Pharr Mills, Inc.*, 216 F.3d 373, 377 (4th Cir. 2000)). There is no dispute that both Plaintiffs here are disabled, qualified individuals, who were discharged or terminated. The question, therefore, is whether the adverse employment action occurred because of the disability.

Disability discrimination requires the "but-for" causation standard. *See Gentry v. E. W. Partners Club Mgmt. Co. Inc.*, 816 F.3d 228, 235 (4th Cir. 2016) (ADA requires but-for causation standard); *Halpern v. Wake Forest Univ. Health Scis.*, 669 F.3d 454, 461–62 (4th Cir. 2012) (Rehabilitation Act requires "solely by reason of" causation standard). "Disability discrimination may be proven through direct and indirect evidence or through the *McDonnell*

16

*Douglas* burden-shifting framework." *Id.* Plaintiffs have not identified any direct evidence of discrimination.

Under the burden-shifting framework, a plaintiff bears the initial burden of establishing a prima facie case. *See Hannah P. v. Coats*, 916 F.3d 327, 342 (4th Cir. 2019). Then, the burden shifts to the defendant to provide a legitimate, nondiscriminatory reason for the allegedly discriminatory conduct. *Id.* Finally, after such a reason has been articulated, the burden shifts back to the plaintiff to prove by a preponderance of the evidence that reason is a mere pretext. *Id.*

Here, DEA has articulated legitimate nondiscriminatory reasons for terminating both Plaintiffs, and they are unable to show these reasons are pretextual.

First, DEA articulated a number of legitimate reasons for terminating Smith, including her violations of DEA information security policy, her poor performance, and her refusal to both follow instructions and appear at the designated workplace. The facts supporting DEA's articulated reasons are undisputed: Smith did not satisfactorily answer Quinn's questions about the Program before it was moved to Headquarters, and after it was moved, Smith continued to contact and interact with Shafernich, despite his removal from the Program. She circumvented her chain of command, improperly stored DEA documents on a personal computer, and persisted in refusing to appear at DEA Headquarters. These facts demonstrate that Smith failed to satisfy DEA's legitimate employment expectations.

Smith is unable to demonstrate these reasons are a mere pretext. She has argued that the evidence consists entirely of self-serving DEA personnel statements, but has not identified any evidence to the contrary. Yet the burden falls to the plaintiff to show by a preponderance of the evidence that an articulated legitimate reason is a pretext, and Smith has not shown any such

17

evidence. Accordingly, under the burden-shifting framework, Smith's disability discrimination claim fails.

Farnsworth's disability discrimination claim also fails. DEA articulated two legitimate, nondiscriminatory reasons for terminating him. The first was his poor performance. The second was that DEA eliminated his position to reduce redundancy between similar DEA programs. Farnsworth's position became unnecessary when DEA completed the decommission of the DEA Headquarters program in Virginia in favor of that in El Paso.

Farnsworth has only asserted that his poor performance was a pretext, but has pointed to no evidence supporting that contention. Because he must show pretext by a preponderance of the evidence, and he has failed to do so, his disability discrimination claim fails as a matter or law.

### (ii) Contractors Are Not a Protected Class

Plaintiffs' Oppositions refer to being discriminated against because they were treated differently from DEA employees. This argument fails on its face.

Both Smith and Farnsworth claim to have been discriminated against due to their non-employee status. Specifically, Smith argues that she was treated unlike DEA employees when she was denied access to the DEA parking lot until she provided medical documentation. Similarly, Farnsworth argues that he was treated unlike DEA employees because he was required to provide medical documentation to support his request for a standing desk.

To the extent that these claims satisfied federal pleading standards, they are not cognizable because employment classification is not a protected class. *See* 29 U.S.C. §§ 623, 701; 42 U.S.C. § 2000e-2(a); *see also Kinnett v. Key W + Sotera Def. Sols.*, 2019 WL 4018347, at *6 (W.D. Va. 2019) ("'Contract employees,' [] are not a protected class of persons."). Thus,

18

employment discrimination based on status as a contractor is not a basis upon which relief may be granted. *See Guion v. Mabus*, 2012 WL 1340117, at *5 (E.D.N.C. 2012).

Moreover, Plaintiffs failed to make out a prima facie discrimination case. In addition to failing to identify membership in a protected class, the discrimination which Plaintiffs complain of, medical documentation requests, does not constitute adverse employment action because those requests do not adversely affect the terms, conditions, or benefits of employment. *See Wells v. Gates*, 336 F. App'x 378, 383 (4th Cir. 2009); *accord Perrin v. Fennell*, 2011 WL 837008, at *8 (E.D. Va. 2011). Furthermore, neither Plaintiff identified similarly situated contractors who received more favorable treatment as comparators. *See Haywood v. Locke*, 387 F. App'x 355, 359 (4th Cir. 2010) (when discrimination allegations are based "upon a comparison to an employee from a non-protected class, . . . the validity of [the] prima facie case depends upon whether that comparator is indeed similarly situated.").

Thus, to the extent that Plaintiffs' Counts I and II charge discrimination relative to DEA employees, the claims fail as a matter of law.

### 3. Retaliation

Plaintiffs claim they were terminated in retaliation for engaging in protected activity. "[T]o prevail on a claim of retaliation, a plaintiff must either offer sufficient direct and indirect evidence of retaliation, or proceed under a burden-shifting method." *Rhoads v. FDIC*, 257 F.3d 373, 391 (4th Cir. 2001). Here, the record lacks direct evidence of retaliation, and Plaintiffs claims have accordingly been brought pursuant to the burden-shifting framework. The burden of proving retaliation rests upon the plaintiff. *Staley v. Gruenberg*, 575 F. App'x 153, 155 (4th Cir. 2014). Whether proceeding "by direct evidence or *McDonnell Douglas* burden-shifting, [a plaintiff] must show (i) that she engaged in protected activity and, (ii) because of this, (iii) her

19

employer took an adverse employment action against her." *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 577 (4th Cir. 2015).

Smith claims she was retaliated against for requesting a reasonable accommodation and for initiating an EEO complaint. However, she has failed to make a prima facie case because there is no evidence of causation. Insofar as her retaliation claim is based on her accommodation request, any inference of retaliation is undercut because she received an accommodation from DEA, and was offered another which she declined. Insofar as her retaliation claim is based on her EEO complaint, the record is devoid of evidence that Quinn, the decision-maker in her case, was aware that she filed the EEO complaint. "Since, by definition, an employer cannot take action because of a factor of which it is unaware, the employer's knowledge that the plaintiff engaged in a protected activity is absolutely necessary to establish . . . the prima facie case." *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998). The undisputed facts show Quinn was not aware of Smith's EEO complaint, and accordingly, Smith has failed to make out a prima facie case of retaliation.

Farnsworth also claims he was retaliated against for requesting a reasonable accommodation and for providing a statement as a witness in Smith's EEO investigation. His claims fail for the same reasons as Smith's. First, the causation element of his claim based on his accommodation request is undercut by the fact that DEA granted his request. Second, the claim based upon his participation in protected activity fails because there is no evidence in the record that Quinn was aware of Farnsworth's protected activity. Accordingly, and like Smith, he has failed to make out a prima facie case of retaliation.

Even if Plaintiffs had made out a prima facie case, they have failed to overcome their burden of demonstrating that the legitimate, nondiscriminatory reasons which DEA has articulated for terminating them were pretextual. The undisputed facts show that Smith's

20

performance was deficient, she was resisting instructions and defying work requirements. The undisputed facts also show that Farnsworth's position was eliminated. Plaintiffs have not pointed toward any evidence showing their terminations to be pretextual, and their retaliation claims therefore fail as a matter of law.

## IV.    CONCLUSION

For the reasons stated above, and for good cause shown, Defendant CSRA's Motion for Summary Judgment, Dkt. 102, and Defendant William Barr, U.S. Attorney General's Motion for Summary Judgment, Dkt. 104, are hereby **GRANTED**.

It is **SO ORDERED**.

January 31 2020
Alexandria, Virginia

Liam O'Grady
United States District Judge